UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X Case No.:22-cv-06122-DLC
GERMAN BAYRON-PAZ,

                                          Plaintiff,

                            **HON. DENISE L. COTE**
    -against-                     United States District Judge

WELLS FARGO BANK, N.A. and
B&Z AUTO ENTERPRISES, LLC d/b/a
EASTCHESTER CHRYSLER JEEP DODGE,

                               Defendants.
------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO COMPEL ARBITRATION

Dated: New York, New York
      April 7, 2023.

                                                      Respectfully Submitted by:

                                                      FAGENSON & PUGLISI, PLLC
                                                      Counsel for Plaintiff

                                                      /s/ *Novlette R. Kidd*
                                                      NOVLETTE R. KIDD, ESQ.
                                                      450 Seventh Avenue, Suite 704
                                                      New York, New York 10123
                                                      Telephone: (212) 268-2128
                                                      Fax: (212) 268-217
                                                      nkidd@fagensonpuglisi.com

## TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES……………………………………………………………………..ii

I. PRELIMINARY STATEMENT ................................................................................................1

II. FACTUAL BACKGROUND…………………………...……………………….2

III. STANDARD OF REVIEW…………………………………………………............3

IV. ARGUMENT ...........................................................................................................................5

    A. Defendants Have Not Shown That There Was A Valid Arbitration Agreement………6

    B. Defendants Have Waived Any Right To Arbitration They Might Have Had……......13

    C. If The Motions Be Granted, The Court Should Stay The Case And Not Dismiss..….14

V. CONCLUSION ........................................................................................................ 15

*Page(s)*

*Table of Cases*

*ACA Financial Guaranty Corp. v. Goldman, Sachs & Co.*,
  25 N.Y.3d 1043, 32 N.E.3d 921, 10 N.Y.S.3d 486 [2015]……………………………….…8

*Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*,
  2014 WL 12661622 (S.D.N.Y. Mar. 19, 2014)………………………...….…………7

*Angerosa v. White Co.*,
  248 A.D. 425, 290 N.Y.S. 204 (4th Dept. 1936)……………………...……...7-8

*Cash v. Titan Financial Services, Inc.*,
  58 A.D. 3d 785, 873 N.Y.S. 2d 642, (2nd Dept. 2009)……………………...…..8-9

*Dassero v. Edwards*,
  190 F.Supp.2d 544 (W.D.N.Y. 2002)…………………………………………………….6-7

*DDJ Management, LLC v. Rhone Group L.L.C.*,
  15 N.Y.3d 147, 931 N.E.2d 87, 905 N.Y.S.2d 118 [2010]………………………...…….....8

*Firma Melodiya v. ZYX Music GMBH*,
  1995 WL 28493 (S.D.N.Y. Jan. 25, 1995)…………………………...…………………....10

*Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.*,
  246 F. 3d 219 (2d Cir. 2001)……………………………………………………..…...4

*Herrera v. Manna 2nd Avenue LLC*,
  2022 WL 2819072 (S.D.N.Y. July 18, 2022)…………………………………………….10

*Hines v. Overstock.com, Inc.*,
  380 Fed.Appx. 22 (2d Cir. 2010)………………………………………………...5,6

*In re Lehman Brothers Inc.*,
  478 B.R. 570 (S.D.N.Y. 2012)……………………………..…………………….....…10

*Jay Novelty, Inc. v. S.K. Newstand, LLC*,
  212 A.D.3d 603, 183 N.Y.S.3d 45 (2nd Dept. 2023)……………….…….........……6

*Katz v. Cellco Partnership*,
  794 F.3d 341 (2d Cir. 2015)………………………………………………………….15

*Morgan v. Sundance, Inc.*,
  142 S.Ct. 1708, 212 L.Ed.2d 753 (2022)………………………………..……4-5, 13-14

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)……………………………………….4

*Opals on Ice Lingerie v. Bodylines Inc.*,
  320 F.3d 362 (2d Cir. 2003)…………………………………………………….4, 5, 10

*Palacios v. Alifine Dining, Inc.*,
  2023 WL 2469765 (2d Cir. 2023)……………………………………………………….4

*Sabo v. Delman*,
  3 N.Y. 2d 155, 143 N.E. 2d 906, 164 N.Y.S. 2d 714 (1957)……………...………….8

*Tillman v. Amblnz Services*,
  2023 WL 2770579 (S.D.N.Y. Apr. 4, 2023)………………..………………….14-15

*Vista Surgical Supplies, Inc. v. Travelers Ins. Co.*,
  50 A.D.3d 778, N.Y.S.2d 532 (2nd Dept. 2008)………………………..…………..11

*Walters v. Starbucks Corp.*,
  --- F.Supp.3d ----2022 WL 3684901 (S.D.N.Y. 2022)…………………………….....11

*Table of Statutes/Rules*

Federal Arbitration Act, 9 U.S.C. § 1, *et seq*……………………………………..4, 5, 13, 14

New York Electronic Signatures and Records Act, N.Y. Tech. Law § 304(2)……………11

Federal Rule of Civil Procedure 12(b)(1)……………………………………………13, 14

Federal Rule of Civil Procedure 12(b)(6)……………………………………………13, 14

I.      PRELIMINARY STATEMENT

Plaintiff, German Bayron-Paz, hereby respectfully submits this memorandum of law in opposition to the motion to compel arbitration of defendant B&Z Auto Enterprises, LLC d/b/a Eastchester Chrysler Jeep Dodge (or the "dealership") (ECF No. 45) and the motion to compel arbitration of defendant Wells Fargo Bank, N.A. ("Wells Fargo") (ECF No. 46). The Court should deny both motions in their entirety.

This is a case of fraud, deception, abuse and oppression perpetrated against Mr. Bayron-Paz by the two defendants. As detailed in the second amended complaint ("Complaint") (ECF No. 41), a copy of which is attached to the accompanying Declaration of the undersigned, and as detailed in Mr. Bayron-Paz's accompanying sworn affidavit, Mr. Bayron-Paz did not sign and did not consent to the retail installment contract in which appears the arbitration provision on which defendants rely for their motions. Mr. Bayron-Paz did also not consent to the arbitration provision in said retail installment contract.

Moreover, defendants waived any right to arbitrate which they might have had by their course of conduct in the case prior to bringing these motions.

In their motions, defendants have advanced no factual allegations contradicting plaintiff's complaint that the finance manager of the dealership had him sign no document – including no retail installment contract – but instead had him sign a blank IPad screen. In light of the dealership's failure to rebut any of Mr. Bayron-Paz's factual allegations, there are no triable issues, and the Court should deny defendants' motions.

Alternatively, should the Court believe that material facts are in dispute, plaintiff respectfully requests that the Court allow the parties a 60-day period of discovery on the issue of contract formation, following which plaintiff requests a jury trial on whether he

agreed to arbitration.

## II. FACTUAL BACKGROUND

In pertinent part, Mr. Bayron-Paz desired to purchase a vehicle and on July 16, 2021 he visited defendant dealership. Sales manager Lemar Davis and saleswoman Mimi told plaintiff that the price of the vehicle in which he was interested was $49,000. Compl. ¶ 47. After giving Mimi a down payment of $41,000, plaintiff went into the office of Julio Nunez, the finance manager. *Id*. ¶¶ 61, 67-68. In Julio's office, plaintiff sat on a chair in front of a desk; Julio sat behind the desk. *Id*. ¶ 74. Julio told plaintiff to purchase a tire and wheel warranty and plaintiff eventually agreed to purchase such a warranty for $1,500. *Id*. ¶ 77.

Julio then held in his hand a tablet which appeared to be an IPad. Plaintiff's Affidavit ("Pl's Aff.") ¶ 17. Julio stretched the hand with the IPad across his desk to plaintiff but continued to hold onto the IPad. *Id*. ¶ 18. Julio then asked plaintiff to use his finger to sign on the screen of the IPad. When plaintiff looked at the screen of the IPad which Julio kept held in his hand, the screen was completely blank; there was no writing on the screen. *Id*. ¶¶ 19-20; Compl. ¶ 82.

Plaintiff asked Julio where the documents were and Julio told plaintiff he should not worry, that he, Julio, would email the documents to plaintiff afterwards and plaintiff could read them at that time. Julio was hurrying plaintiff and wanted to get to his next customer. Plaintiff trusted what he understood Julio to have said, that plaintiff would be able to read all documents before anything became effective. Pl's Aff. ¶ 21.

Julio told plaintiff, "sign here" and plaintiff signed the screen in blank as Julio requested. Compl. ¶¶ 81, 83. After plaintiff signed the screen, Julio would retract his arm,

turn the IPad to face himself, and tap on the IPad. Then, Julio would again stretch his hand with the IPad across his desk and say "sign here", again telling plaintiff to sign on the blank screen of the IPad. Pl's Aff. ¶ 22. Julio never released the IPad so plaintiff could manipulate for himself the IPad or the screen on the IPad. There was no document on any of the screens which plaintiff signed. There was no writing on any of the screens which plaintiff signed. The screens were blank. Plaintiff did not sign the retail installment contract. There was no retail installment contract on the IPad screen for plaintiff to sign. *Id*. ¶¶ 23-24.

Julio did not tell plaintiff he would affix plaintiff's signature to a retail installment contract. Plaintiff did not consent to Julio affixing his signature to a retail installment contract. Plaintiff did not consent to any retail installment contract. Plaintiff would never consent to the many false statements in said contract. *Id*. ¶ 25. Julio did not email any documents to plaintiff. *Id*. ¶ 10. On July 19, 2021, while plaintiff was returning the car to the dealership for repairs for the third time in three days, plaintiff specifically requested documents concerning the vehicle, having by then realized that the dealership had in fact not emailed any of the paperwork to him. Lemar then gave plaintiff a few sheets of paper. It was days later, when plaintiff looked at the papers which Lemar had given to him, that plaintiff first saw the retail installment contract with his false signature. *Id*. ¶¶ 11-13. The dealership assigned the fraudulent retail installment contract to Wells Fargo. Compl. ¶ 23.

### III. <u>STANDARD OF REVIEW</u>

"In deciding motions to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment. We must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to

3

interrogatories, and admissions on file, together with affidavits. And we must draw all reasonable inferences in favor of the non-moving party." *Palacios v. Alifine Dining, Inc.*, 2023 WL 2469765, at *1 (2d Cir. 2023) (Summary Order) (citations and quotation marks omitted). "Whether a dispute is arbitrable comprises two questions: (1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Acc. and Indem. Co. v. Swiss Reinsurance America Corp.*, 246 F. 3d 219, 226 (2d Cir. 2001) (citations and quotation marks omitted).

While there is "a liberal federal policy favoring arbitration agreements", *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "it is also true that the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties. Arbitration under the Act is a matter of consent, not coercion. The purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so*. Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (citations and quotation marks omitted).

The Supreme Court has recently explained its ruling in *Moses H. Cone* that there is a liberal federal policy favoring arbitration agreements. In *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713-14, 212 L.Ed.2d 753 (2022), the Court held:

> But the FAA's "policy favoring arbitration" does not authorize federal courts to invent special, arbitration-preferring procedural rules. *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. 927. Our frequent use of that phrase connotes something different. The policy, we have explained, is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and

to place such agreements upon the same footing as other contracts. Or in another formulation: The policy is to make arbitration agreements as enforceable as other contracts, but not more so. Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. The Supreme Court has made clear that the FAA's policy is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism.

(Some citations and quotation marks omitted.)

In deciding whether the party resisting arbitration has a valid ground to defeat an arbitration contract, courts look to the defenses available under state law, in this case New York. *Opals on Ice*, 320 F.3d at 370 (citing "[New York] State law and general contract law" in holding that "a forged signature renders a contract void *ab initio*" and denying request to compel arbitration). A party may therefore not be forced to arbitrate where he has not agreed to do so.

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 Fed.Appx. 22, 24 (2d Cir. 2010). If the Court finds a genuine dispute of material fact concerning the existence of an arbitration agreement, "the court shall proceed summarily to the trial thereof." A party may demand a trial by jury. Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.

### IV.     ARGUMENT

Plaintiff respectfully submits that the Court should deny the motion to compel arbitration because defendants have not shown that plaintiff consented to arbitration and there is no valid agreement to arbitrate. Further and in any event, defendants have waived

any right to arbitration.

### A. Defendants Have Not Shown That There Was A Valid Arbitration Agreement.

As shown above, plaintiff alleged in his Complaint – and further details in his accompanying affidavit – that he did not sign the retail installment contract ("RIC") on which defendants rely. He signed no document with Julio. When he signed the IPad, the screen was devoid of any writing, blank. It is Julio or someone else at the dealership who affixed a facsimile of plaintiff's computerized signature to the RIC. That was done without plaintiff's knowledge or consent. In sum, plaintiff alleges that the dealership forged his signature on the RIC.

In response to plaintiff's complaint, defendants have relied upon nothing more than the same forged RIC. The Court should find that defendants have not met their initial burden of showing that an agreement to arbitrate was made. *Hines*, 380 Fed.Appx. at 24 (denying motion to compel arbitration).

Under New York law, "forgery is simply one "species" under the broader genus of fraud." *Jay Novelty, Inc. v. S.K. Newstand, LLC*, 212 A.D.3d 603, 605, 183 N.Y.S.3d 45 (2nd Dept. 2023). The facts of the case at bar fall within the fraud-in-the-factum category, and specifically, forgery. In cases where forgery is alleged, the Court, not an arbitrator, must determine whether an agreement to arbitrate was formed. *Dassero v. Edwards*, 190 F.Supp.2d 544, 555. (W.D.N.Y. 2002). "[M]any appellate courts have held that the judiciary rather than an arbitrator decides whether a contract came into being, [ ] the court stated that when a person forges another's signature, or where an agent makes a commitment on the principal's behalf without authority to do so,

no contract came into being; and as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator (unless the parties agree to arbitrate this issue after the dispute arises). It was possible to arbitrate in [ ] without circularity; in forgery and agency cases, by contrast, the arbitrator's authority to resolve the dispute would depend on one particular answer to that very dispute. Only a court can break that circle."

(citations and quotations marks omitted) (denying motion to compel arbitration and to stay, and setting the matter down for a trial as to whether plaintiffs there signed the arbitration agreement). Here, the Court should also determine whether Mr. Bayron-Paz signed an arbitration clause. We believe the Court should grant plaintiff judgment as a matter of law, since there is no triable issue, but if the Court finds that triable issue exists, the Court should set the matter down for a jury trial. If the Court does direct a jury trial, in advance of the jury trial, the court may allow for discovery on the issue of contract formation. *Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*, 2014 WL 12661622, at *1 (S.D.N.Y. Mar. 19, 2014).

> It has long been the public policy of the State of New York that:
>
> [p]rotection is given to one who is injured by falsehood or deception; fraud vitiates everything which it touches, and destroys the very thing which it was devised to support; the law does not temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper, and it makes no difference whether the fraud goes to the factum or whether it is preliminary to the execution of the agreement itself. [] In other localities, including our own, fraud is considered so abhorrent and repugnant that the court will not permit itself to be made a party to enforcing any agreement upon which the hand of deception has been laid, even though it occurred in the early stages of the negotiations.

*Angerosa v. White Co.*, 248 A.D. 425, 431-32, 290 N.Y.S. 204 (4th Dept. 1936) *affirmed* 275 N.Y. 524, 11 N.E.2d 325 (1937) (internal citations omitted) (affirming jury verdict for the plaintiff on a cause of action in fraud and holding that negligence of the plaintiff is no defense to an action in fraud, where the defendant's salesman misrepresented to the

plaintiff that the truck being sold by the defendant to the plaintiff had a carrying capacity of 10 to 12 tons but the purchase order signed by the plaintiff stated that the carrying capacity of the truck was no more than 8 tons). *See also*, *Sabo v. Delman*, 3 N.Y. 2d 155, 161, 143 N.E. 2d 906, 164 N.Y.S. 2d 714 (1957) (reversing dismissal of cause of action for rescission based on fraud and holding that the parol evidence rule "has no application in a suit brought to rescind a contract on the ground of fraud. In such a case, it is clear, evidence of the assertedly fraudulent oral misrepresentation may be introduced to avoid the agreement."). By the same token, a merger clause would fare no better than the parol evidence rule.

The New York Court of Appeals has recently painted with an even broader brush in favor of the defrauded. On the question of justifiable reliance, the Court held in *DDJ Management, LLC v. Rhone Group L.L.C.*, 15 N.Y.3d 147, 931 N.E.2d 87, 905 N.Y.S.2d 118 [2010] that this question is ordinarily for the trier of fact. *See also*, *ACA Financial Guaranty Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 32 N.E.3d 921, 10 N.Y.S.3d 486 [2015] (holding that the plaintiff sufficiently alleged justifiable reliance on the defendant's misrepresentations and that the question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss).

While New York law recognizes the common law rule that "a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents". *Cash v. Titan Financial Services, Inc.*, 58 A.D. 3d 785, 788, 873 N.Y.S. 2d 642, (2nd Dept. 2009) (internal citations omitted), this rule admits of limitations. The Court in *Cash* went on to recognize certain of the limitations: "[T]here are situations where an instrument will

8

be deemed void because the signer was unaware of the nature of the instrument he or she was signing, such as where the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger."

In *Cash*, the Second Department dismissed the fraud claim because the plaintiff there "testified that she has an eleventh grade education, that she can read and write English, *that she was neither prevented from reading the closing documents, nor told not to read them,* or forced to sign them, that she was not suffering from any mental or physical disability at the time of the closing that prevented her from reading the documents prior to signing them, but that she nonetheless signed all of the closing documents without reading them." (emphasis added). *Id*. at 645-46, 788. Unable to show that she fell within any of the exceptions, Cash's fraud claim failed.

Mr. Bayron-Paz, however, has shown that he falls within certain of the exceptions delineated in *Cash*: Julio prevented plaintiff from reading any of the documents by presenting plaintiff with a blank screen on the IPad and when plaintiff asked him where the documents were Julio told plaintiff not to worry, he would email them to plaintiff later and he could read the documents at that time. Therefore, the dealership, through Julio, *did* prevent plaintiff from reading the documents, including the RIC, and made it so that plaintiff *could not* read the documents. The dealership then affixed a facsimile of plaintiff's computerized signature on whichever documents it chose, as and when it chose to do so.

"[C]ourts must refuse to enforce arbitration clauses contained in documents alleged to be forgeries. Here, of course, since the agreement that contains the arbitration clause is alleged by plaintiffs to be a forgery, the arbitration clause will not be enforced at this time."

9

*Firma Melodiya v. ZYX Music GMBH*, 1995 WL 28493, at *4 n. 3 (S.D.N.Y. Jan. 25, 1995). "Because there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract existed in the case at hand." *Opals on Ice*, 320 F.3d at 370.

None of defendants' cases negates plaintiff's argument. For example, *In re Lehman Brothers Inc.*, 478 B.R. 570, 587 n.19, (S.D.N.Y. 2012), B&Z Mem. at 4, (ECF No. 45-1), the party resisting arbitration claimed that it did not understand, or know the terms of, the contract before the party signed it. Unlike in *Lehman Brothers*, plaintiff's claims are that the dealership did not show him a RIC and he did not sign a RIC; instead, the dealership affixed his signature to the RIC without his knowledge or consent. *Herrera v. Manna 2nd Avenue LLC*, 2022 WL 2819072, at *5 (S.D.N.Y. July 18, 2022) is also distinguishable, since there the Court stated that the plaintiffs acknowledged that they signed the agreement and knew the agreement concerned arbitration. *See*, B&Z Mem. at 4.

The dealership claims that "Plaintiff does not deny electronically signing the RIC." B&Z Mem. at 4. The dealership is plainly wrong. As noted above, plaintiff alleges in the Complaint – and same is detailed in his accompanying affidavit – that he did not sign the RIC; he signed a blank IPad screen.

For its part, Wells Fargo is also wrong in asserting that plaintiff admits to signing the RIC, citing paragraph 83 of the Complaint. Wells Fargo Mem. at 2. In paragraph 82, deliberately not cited by Wells Fargo, plaintiff alleges that when he looked at the IPad's screen, there was no writing or document thereon; there was only a blank space where Julio asked plaintiff to sign. In paragraph 83, plaintiff alleges that he signed the blank screen as Julio told him to do. Moreover, contrary to Wells Fargo's argument, (Wells Fargo Mem. at 6), plaintiff neither affixed his computerized signature to the RIC nor affixed his

computerized signature "with the intent to sign the record", as required by New York Electronic Signatures and Records Act, N.Y. Tech. Law § 304(2). *See*, *Vista Surgical Supplies, Inc. v. Travelers Ins. Co.*, 50 A.D.3d 778, N.Y.S.2d 532, 533 (2nd Dept. 2008) (holding that the physician's reports were inadmissible because they were "not subscribed and affirmed, but merely contained facsimiles of the physician's signature without any indication as to who placed them on the reports, nor are there any indicia that the facsimiles were properly authorized").

The dealership advances the novel argument that the arbitrator should decide the "gateway questions of arbitrability" because the arbitration provision in the RIC states, in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute…).

B&Z Mem. at 4. Although the dealership does not use the term, it appears its argument is that the quoted language constitutes a delegation clause. This argument is without merit. The purported arbitration provision contains no delegation clause. A typical delegation clause provides that "the Arbitrator -- and not a court or agency -- shall have the exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of the Arbitration Agreement. This language unambiguously delegates the question of arbitrability to the arbitrator, and is virtually identical to that of other delegation provisions that the Supreme Court has enforced." *Walters v. Starbucks Corp.*, --- F.Supp.3d ----2022 WL 3684901, at *4 (S.D.N.Y. 2022). There is no language in the arbitration provision remotely similar. The provision does not name an arbitral forum, but instead mentions the American Arbitration Association "or any

other organization". The clause unsurprisingly also does not incorporate the arbitration rules of any forum. The dealership's quoted language merely refers to claims which may be within the scope of the arbitration provision, not to the question of whether an agreement to arbitrate was formed.

Without citation to any legal authority, Wells Fargo argues that plaintiff has not sued for rescission, he is paying back the loan and he has retained the vehicle, so this means that plaintiff does not dispute the arbitration provision. Wells Fargo Mem. at 6. This argument is misguided and ignores vast swaths of the complaint. Plaintiff alleges in the complaint that when the dealership sold him the vehicle his credit score was above 800. Compl. ¶ 65. This is a credit score which plaintiff had worked hard for and of which he was proud. Plaintiff also details in his complaint the many defects in the vehicle and the several times he asked the dealership to rescind the sale by providing him a different vehicle or by refunding his $41,000 down payment, to no avail. With the dealership threatening to "dump" plaintiff's vehicle outside on the road if he dared to surrender it to the possession of the dealership, the dealership gave plaintiff no choice but to retain the vehicle and pay the loan to protect his creditworthiness.

The record contradicts Wells Fargo's argument that plaintiff will be able to vindicate his rights in an arbitral forum. Wells Fargo Mem. at 8-10. According to the Economic Policy Institute in 2017, arbitrators awarded Wells Fargo a net average of almost $11,000 against consumers arbitrating claims against Wells Fargo. *See*, Kidd Decl. at Exhibit 6. Small wonder, therefore, that Wells Fargo has filed the within motion to force plaintiff to arbitration. Arbitration is extremely lucrative for Wells Fargo. No reasonable person would not suspect bias or prejudice. On the contrary, plaintiff does not at all believe his claims

would be vindicated in arbitration. Also, Wells Fargo has been credibly and repeatedly accused of violations against its auto loan customers, similar to the violations of which plaintiff complains herein. *See*, the CFPB Consent Order, Kidd Decl. Ex. 7. Moreover, as plaintiff explains, he has had experience being a juror and he wishes to exercise his Seventh Amendment constitutional right to a trial by jury in Court. Pl's Aff. ¶ 29.

B. **Defendants Have Waived Any Right To Arbitration They Might Have Had.**

This action was commenced on July 18, 2022. Wells Fargo filed an answer with twenty-seven affirmative defenses, the twenty-fifth of which asserted arbitration. ECF No. 8. A first amended complaint was filed on October 21, 2022, ECF No. 15, in response to which Wells Fargo filed a Rule 12(b)(6) motion to dismiss on December 1, 2022. ECF No. 26. On December 2, 2022, the Court held the initial pretrial conference. At that conference, counsel for the dealership requested the matter be sent to mediation. The Court directed that the dealership provide to plaintiff copies of all documents concerning the sale of the vehicle, and directed the parties to mediation. No documents were provided to plaintiff. On January 27, 2023 the parties' mediation proved unsuccessful. On February 10, 2023, the dealership filed a Rule 12(b)(1) and 12(b)(6) motion to dismiss or to compel arbitration under 9 U.S.C. § 1 *et seq*. ECF No. 39. Apart from Wells Fargo's answer in August 2022, which is no longer operative, this was the first time any document whatsoever was being filed which even mentioned arbitration.

Under *Morgan v. Sundance, Inc*., 142 S.Ct. 1708, it is respectfully submitted that defendants have waived any right they might have had to arbitrate (which plaintiff believes was none). The Supreme Court in *Sundance* stated that waiver is the intentional

13

relinquishment or abandonment of a known right. *Id*. at 1714. The Supreme Court directed that the "bespoke rule of waiver for arbitration" whereby delay or detrimental reliance of the non-moving party was an additional factor considered by courts, though regarding only contracts of arbitration and not for any other type of contract, be eliminated. *Id*. at 1713.

As relevant to the Court's holding, Sundance had filed an unsuccessful motion to dismiss and participated in an unsuccessful mediation. Then, not eight months after the commencement of the action, Sundance moved to compel arbitration for the first time. The Court vacated the Eight Circuit's opinion compelling arbitration and remanded the case for the Eighth Circuit to consider whether Sundance had waived arbitration under the law of waiver common for all contracts, which does not consider prejudice to the non-movant. Defendants here knew there was a purported arbitration clause in the RIC; Wells Fargo even listed arbitration as an affirmative defense. Yet, Wells Fargo filed a Rule 12(b)(6) motion to dismiss and then both defendants participated in mediation requested by the dealership. Defendants waived any right to compel arbitration.

**C.** **If The Motions Be Granted, The Court Should Stay The Case And Not Dismiss.**

Defendants request in their motions that the matter be compelled to arbitration and the case dismissed, alternatively, that the case be stayed. The dealership further argues that the case should be dismissed under Fed. R. Civ. P. 12(b)(1). B&Z Mem. at 5. The Court should deny these requests. The FAA by its terms states that the case must be stayed, not dismissed, if the matter is compelled to arbitration. "When the Federal Arbitration Act ("FAA") applies to an agreement and requires arbitration as in this case courts should stay proceedings during arbitration, not dismiss the case." *Tillman v. Amblnz Services*, 2023 WL

14

2770579, at *2 (S.D.N.Y. Apr. 4, 2023), citing *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). In addition, Rule 12(b)(1) is not implicated in a decision as to whether to compel arbitration. "Courts within this district have construed an arbitration clause as a forum selection clause and held that "an arbitration clause does not implicate the Court's subject matter jurisdiction."

V. <u>CONCLUSION</u>

By reason of the foregoing, plaintiff respectfully requests that both defendants' motions to compel arbitration be denied in their entirety.

Dated: New York, New York
    April 7, 2023.

Respectfully Submitted By:

FAGENSON & PUGLISI, PLLC
Counsel for Plaintiff


*/s/ Novlette R. Kidd*
NOVLETTE R. KIDD, ESQ.
450 Seventh Avenue, Suite 704
New York, New York 10123
Telephone: (212) 268-2128
Fax: (212) 268-2127
Nkidd@fagensonpuglisi.com