```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :       22cv6122 (DLC)
GERMAN BAYRON-PAZ,                   :
                                     :
                   Plaintiff,        :       OPINION AND ORDER
                                     :
              -v-                    :
                                     :
WELLS FARGO BANK, N.A. and B&Z AUTO  :
ENTERPRISES, LLC d/b/a DBA           :
EASTCHESTER,                         :
                                     :
                   Defendants.       :
                                     :
------------------------------------ X
```

APPEARANCES:

For the plaintiff:
Fagenson & Puglisi
Novlette R. Kidd
450 Seventh Avenue, Suite 704
New York, NY 10123

For defendant Wells Fargo Bank, N.A.:
Liebler, Gonzalaez & Portuondo
Ira Scot Silverstein
44 West Flagler Street, 25th Floor
Suite 6
Miami, FL 33130

For defendant B&Z Auto Enterprises, LLC d/b/a DBA Eastchester:
Labonte Law Group PLLC
Scott Howard Mandel
333 Jericho Turnpike, Suite 200
Jericho, NY 11753

DENISE COTE, District Judge:

German Bayron-Paz brought this action against B&Z Auto

Enterprises, LLC ("B&Z") and Wells Fargo Bank, N.A. ("Wells

Fargo"), alleging that the defendants engaged in fraudulent

sales practices relating to the plaintiff's purchase of a
vehicle from B&Z.  The defendants have moved to compel
arbitration and dismiss the case.  The contract between the
parties contains an agreement to arbitrate their dispute, but
the plaintiff asserts he was prevented from reading the contract
before he signed it.  For the following reasons, the motions to
compel arbitration are granted.

## Background

The following facts are taken from the second amended
complaint ("SAC") and the evidence that was submitted in
connection with the defendants' motions to compel arbitration.
This Opinion summarizes only those facts relevant to the instant
motion.  The facts are undisputed unless otherwise noted.

On July 16, 2021, Bayron-Paz bought a new 2021 Jeep
Cherokee ("Vehicle") from B&Z.  When he had visited B&Z two
months earlier, the plaintiff had been told that the price of
the Vehicle was $49,000.  On July 16, the plaintiff made a down
payment of $41,000.  He intended to finance the balance.

The contract governing the financing of the Vehicle is the
retail installment contract ("Contract").  At the top of the
Contract, it states:

RETAIL INSTALMENT CONTRACT
SIMPLE FINANCE CHARGE (WITH ARBITRATION AGREEMENT)

The first page of the Contract includes the following

provision:

> **Agreement to Arbitrate**: By signing below, you
> agree that, pursuant to the Arbitration Provision
> on page 5 of this contract, you or we may elect
> to resolve any dispute by neutral, binding
> arbitration and not by a court action.

The plaintiff's electronic signature appears below this text.

The Contract includes the following arbitration clause on

its fifth page:

> Any claim or dispute, whether in contract, tort,
> statute or otherwise (including the interpretation and
> scope of this Arbitration Provision, and the
> arbitrability of the claim or dispute), between you
> and us or our employees, agents, successors or
> assigns, which arises out of or relates to your credit
> application, purchase or condition of this vehicle,
> this contract or any resulting transaction or
> relationship (including any such relationship with
> third parties who do not sign this contract) shall, at
> your or our election, be resolved by neutral, binding
> arbitration and not by a court action.

The last page of the Contract states:

> You agree to the terms of this contract.  You confirm
> that before you signed this contract, we gave it to
> you, and you were free to take it and review it.  You
> acknowledge that you have read all pages of this
> contract, including the arbitration provision on page
> 5, before signing below.  You confirm that you
> received a completely filled-in copy when you signed
> it.

(Emphasis supplied.)  The plaintiff's electronic signature

also appears below this text.  In July 2021, B&Z assigned

the Contract to Wells Fargo.

3

On the day he bought the Vehicle, the plaintiff met with
Julio Nunez, the B&Z finance manager.  The plaintiff sat across
from Nunez at Nunez's desk and could not see Nunez's computer
screen.  Nunez did not give the plaintiff hard copies of the
Contract to sign.  Nunez told the plaintiff that the loan for
the balance of the sale price would be for a term of five years,
with a monthly payment of about $439.

According to the plaintiff, Nunez held an iPad in his hand
and stretched his arm out towards the plaintiff, presenting the
plaintiff with the iPad and keeping the iPad in his hand.  Nunez
asked the plaintiff to use his finger to sign the screen on the
iPad.  The plaintiff contends that the screen on the iPad was
blank.  When the plaintiff asked where the documents were, Nunez
said that he shouldn't worry, and that Nunez would email the
plaintiff the documents afterwards and he could read them then.
The plaintiff thought that he would be able to read the
documents before they became effective.  Nunez then told the
plaintiff to "sign here," and the plaintiff signed the iPad
screen.  Nunez then retracted the iPad, tapped the iPad,
extended the iPad to the plaintiff a second time, told him to
sign the blank iPad screen a second time, and the plaintiff did
so.  Nunez held onto the iPad the whole time, so the plaintiff
was unable to manipulate the iPad screen.  Nunez did not tell
the plaintiff what he was signing and did not explain the terms

of the Contract.  Nunez also did not tell the plaintiff that his
signature was going to be attached to the Contract, and the
plaintiff states that he did not consent to Nunez attaching his
signature to the Contract.

According to Nunez, he did not hold onto the iPad while the
plaintiff signed it.  Nunez also asserts that the Contract was
contained on the iPad screen and that he did not prevent or
dissuade the plaintiff from reading the Contract.  Nunez states
that the arbitration clause is visible when customers
electronically sign the Contract.

The plaintiff immediately had problems with the Vehicle.
When Bayron-Paz attempted to drive the Vehicle out of B&Z on the
day he bought it, the check engine light was illuminated, and he
had to wait four hours for the Vehicle to be repaired at the
dealership.  Then, on his way home, the check engine light
turned on again.  By July 19, the Vehicle exhibited several
other defects.

On July 19, the plaintiff returned to B&Z and requested
that they give him a new vehicle or cancel the sale and refund
his money.  B&Z refused.  Realizing that he had never been given
the paperwork for the sale, the plaintiff then requested and
received hard copies.  When the plaintiff read the paperwork, he
found that the price of the Vehicle was $63,399, not $49,000.
The amount he had borrowed to finance the Vehicle was

$36,388.79, not $8,000, and the term of the loan was six years with a monthly payment of $567.55.

The plaintiff commenced this action on July 18, 2022, alleging that the defendants engaged in fraudulent sales practices.  The plaintiff brings claims under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., the Magnuson-Moss Warranty -- Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 et seq., New York General Business Law § 349, the New York Motor Vehicle Retail Instalment Sales Act, N.Y. Pers. Prop. Law §§ 301 et seq., and a claim sounding in common law fraud. The case was reassigned to this Court on August 17.

Wells Fargo filed an answer on August 23.  On October 21, Wells Fargo consented to the plaintiff filing a first amended complaint ("FAC").  On December 1, Wells Fargo moved to dismiss the FAC.  On February 10, 2023, B&Z moved to compel arbitration.

With the consent of the defendants, the SAC was filed on March 3.  Wells Fargo and B&Z moved to compel arbitration on March 7 and March 17, respectively.  The motions became fully submitted on April 22.  The evidence submitted with the motion includes the Contract, an affidavit from Bayron-Paz, and a declaration from Nunez.[1]

---

[1] On April 28, the plaintiff moved to strike the Nunez declaration submitted with the defendants' reply brief because it was not signed.  The defendants filed a signed copy of the declaration on May 5.

## Discussion

When deciding motions to compel arbitration, courts may
apply a standard "similar to that applicable for a motion for
summary judgment."  Barrows v. Brinker Rest. Corp., 36 F.4th 45,
49 (2d Cir. 2022) (citation omitted).  On a motion to compel
arbitration, courts therefore consider "all relevant, admissible
evidence submitted by the parties and contained in pleadings,"
including affidavits, and draw all reasonable inferences in
favor of the non-moving party.  Meyer v. Uber Techs., Inc., 868
F.3d 66, 74 (2d Cir. 2017) (citation omitted).  "Where the
undisputed facts in the record require the matter of
arbitrability to be decided against one side or the other as a
matter of law, [courts] may rule on the basis of that legal
issue and avoid the need for further court proceedings."  Id.
(citation omitted).

The Federal Arbitration Act ("FAA") provides:

> A written provision in . . . a contract evidencing a
> transaction involving commerce to settle by
> arbitration a controversy thereafter arising out of
> such contract or transaction . . . shall be valid,
> irrevocable, and enforceable, save upon such grounds
> as exist at law or in equity for the revocation of any
> contract.

9 U.S.C. § 2.  The FAA establishes a "liberal federal policy
favoring arbitration agreements," requiring courts "rigorously
to enforce arbitration agreements according to their terms."

Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018) (citation omitted).

Courts "will not enforce arbitration unless and until it is determined that an agreement [to arbitrate] exists." Soliman v. Subway Franchisee Advertising Fund Trust, Ltd., 999 F.3d 828, 834 (2d Cir. 2021).  "An agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all.  And if it is not a contract, it cannot serve as the basis for compelling arbitration." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 251 (2d Cir. 2019). Conversely, "a court must hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022).

"When moving to compel arbitration, the party seeking arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Barrows, 36 F.4th at 50 (citation omitted).  If the party seeking arbitration satisfies that burden, then the opposing party must "counter with at least some evidence to substantiate her denial that an agreement had been made." Id. (emphasis in original) (citation omitted).  "If there is a disputed question of material fact, such that the making of the arbitration agreement is in issue, then the court shall proceed summarily to the trial thereof." Id. at 49 (quoting 9 U.S.C. § 4).

The threshold question of whether the parties agreed to arbitrate "is governed by state-law principles of contract formation." Starke v. SquareTrade, Inc., 913 F.3d 279, 288 (2d Cir. 2019).  Under New York law,[2] "in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent."  Id. (citation omitted).  "[A] party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms unless there is a showing of fraud, duress, or some other wrongful act on the part of any party to the contract."  Prompt Mortg. Providers of N. Am., LLC v. Zarour, 64 N.Y.S.3d 106, 108 (2d Dep't 2017) (citation omitted).  Moreover, "[t]he use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand."  Phila. Ins. Indemn. Co. v. Kendall, 151 N.Y.S.3d 392, 396 (1st Dep't 2021) (citing New York's Electronic Signatures and Records Act, N.Y. State Tech. Law § 304(2)).

Applying these principles, the defendants have carried their burden to show that the plaintiff entered into the Contract and is bound by its arbitration clauses.  On July 16, 2021, the plaintiff bought an expensive new car from B&Z.  He knew that he needed to sign a contract in connection with that

---

[2] The Contract provides that "federal law and the laws of the state of [B&Z's] address shown on page 1 of this contract apply to this contract."  B&Z's address on the first page of the Contract is in New York State.

purchase, particularly because he needed to finance part of the purchase price and wanted the benefits of warranty.  He expected the financing terms to be set forth in the written contract.  On the day of the purchase, before he drove away with the car, he was asked to sign an iPad as he sat at the salesman's desk.  He had not yet been given any contract of sale or financing agreement, and therefore asked, before he entered his signature on the iPad, where the documents were.  The salesman told him not to worry and that the documents would be emailed to him afterwards.  He then signed the iPad in two locations.  He did not see any document on the iPad screen but nonetheless signed twice.  His electronic signature appears in two places on the Contract.

Accepting each of the plaintiff's representations in his April 7 affidavit as true, his actions and inaction on the day of purchase constitute admissions sufficient to show that he chose to sign the contract for sale of the automobile without reading it.  The plaintiff has not identified a material fact in dispute that requires a trial to determine whether he signed the Contract.  He knew that the transaction would be governed by a written agreement with the dealership for the purchase of the car and the financing of the purchase, but chose to sign the iPad twice without requesting that its contents be displayed to

him or otherwise demanding a hard copy of the Contract before he gave the dealership his signature on the iPad.

The plaintiff argues that the attachment of his signature to the Contract constitutes forgery.  "[F]orgery is defined by the common law to be the fraudulent making of a writing to the prejudice of another's rights." Piedra v. Vanover, 579 N.Y.S.2d 675, 677 (2d Dep't 1992) (citation omitted); see also Bank of Am., N.A. v. Adolphus, 112 N.Y.S.3d 726, 726 (1st Dep't 2019). Fraud under New York law consists of five elements: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015).

In support of his defense of forgery, the plaintiff argues that the salesman "prevented" him from reading the Contract. The plaintiff emphasizes that the iPad screen was blank when he signed it and that the salesman promised to email the Contract to the plaintiff when the plaintiff inquired where it was.  He speculates that the salesman must have committed forgery by somehow attaching his signatures, which he placed on the iPad, to the Contract.

This argument fails.  The plaintiff does not deny that his signature appears on the Contract twice, that he in fact signed

the iPad twice, that he understood that his iPad signature was
necessary for the sale of the Vehicle on the day of purchase,
and that he did not insist on reading the Contract before
placing his signature on the iPad twice.  Despite his counsel's
argument that he was "prevented" from reading the Contract, he
has not shown that was so.  These facts are indistinguishable
from those instances in which a consumer complains that he did
not have adequate time to read a contract before signing it.
See, e.g., Prompt Mortg., 64 N.Y.S.3d at 108.

Lastly, the plaintiff asserts that the defendants have
waived their right to compel arbitration.  Waiver "is the
intentional relinquishment or abandonment of a known right."
Morgan, 142 S. Ct. at 1713.  Courts must determine if a party
"knowingly relinquish[ed] the right to arbitrate by acting
inconsistently with that right," id. at 1714, and may consider
factors such as "(1) the time elapsed from when litigation was
commenced until the request for arbitration; (2)the amount of
litigation to date, including motion practice and discovery; and
(3) proof of prejudice."  La. Stadium & Exposition Dist. v.
Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159
(2d Cir. 2010) (citation omitted).[3]

---

[3] Following Morgan, it is doubtful that proof of prejudice
remains a factor to be considered in a waiver analysis.  See
Morgan, 142 S. Ct. at 1712-13.

The defendants have not waived their right to arbitration. This action was filed on July 18, 2022.  With the consent of the defendants, the plaintiff twice amended his complaint.  The defendants timely moved to compel arbitration thereafter.  Less than a year passed between the commencement of this action and the motions to compel arbitration, and no significant litigation has occurred in the intervening months.  The defendants' actions have not demonstrated an intentional abandonment of their right to arbitration.

The defendants assert that this action should be dismissed rather than stayed.  The plaintiff requests that, in the event the defendants' motions to compel arbitration are granted, this action be stayed rather than dismissed.  "[I]t is inappropriate for a court to dismiss an action after compelling arbitration where a stay has been requested by any party."  Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 226 n.5 (2d Cir. 2019).  Accordingly, this action will be stayed.

## Conclusion

The defendants' March 7 and March 17 motions to compel arbitration are granted.  This action is stayed pending the outcome of the arbitration proceedings.

Dated:    New York, New York
          July 7, 2023

DENISE COTE
United States District Judge

14